JAP:JPM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – –X

UNITED STATES OF AMERICA

- against -

ROMAN SHAULOV,

           Defendant.

– – – – – – – – – – –X

AFFIDAVIT IN
SUPPORT OF
REMOVAL TO THE
WESTERN DISTRICT
OF PENNSYLVANIA

(Fed. R. Crim. P. 5)

No. 17-M-

EASTERN DISTRICT OF NEW YORK, SS:

        SEAN GRILLO, being duly sworn, deposes and states that he is a Special

Agent with the United States Food and Drug Administration, Office of Criminal

Investigations ("FDA"), duly appointed according to law and acting as such.

        On or about December 13, 2017, an arrest warrant was issued by the United

States District Court for the Western District of Pennsylvania commanding the arrest of

defendant ROMAN SHAULOV for Conspiracy to Commit Mail Fraud, Wire Fraud, and

Bank Fraud in violation Title 18, United States Code, Section 1349.

        The source of your deponent's information and the grounds for his belief are

as follows:[1]

        1.     On December 13, 2017, the United States District Court for the Western

District of Pennsylvania issued an arrest warrant for the defendant ROMAN SHAULOV after

a grand jury in that district returned an indictment charging the defendant and others with

---

[1]     Because the purpose of this Complaint is to set forth only those facts necessary
to establish probable cause to arrest, I have not described all the relevant facts and
circumstances of which I am aware.

Conspiracy to Commit Mail Fraud, Wire Fraud, and Bank Fraud in violation Title 18, United States Code, Section 1349.   A copy of the arrest warrant and indictment are attached hereto as <u>Exhibit A</u>.

2.     On or about December 19, 2017, special agents with the FDA arrested the defendant ROMAN SHAULOV at his residence on Shore Parkway, Brooklyn, New York. During a previous interview with the defendant, he had identified the address at which he was arrested as his residence.

3.     Furthermore, as a participant in the underlying investigation in the Western District of Pennsylvania, I am familiar with the indictment against the defendant ROMAN SHAULOV and have previously met and interviewed the defendant.   Based on my recollection and participation in the investigation, I believe the defendant is the same person I have previously encountered during the investigation of the offense and who is charged in the indictment in the Western District of Pennsylvania.

WHEREFORE, your deponent respectfully requests that the defendant

ROMAN SHAULOV be removed to the United States District Court for the Western District

of Pennsylvania so that he may be dealt with according to law.

_____
SEAN GRILLO
Special Agent, United States Food and Drug
Administration

Sworn to before me this
19th day of December, 2017


_____
THE HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

**EXHIBIT A**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**

v.

**ROMAN SHAULOV**

**WARRANT FOR ARREST**

Case Number: **2:17−CR−00335−DSC**
**\*SEALED\***

To: The United States Marshal
    and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest      **ROMAN SHAULOV,**

and bring him or her forthwith to the nearest magistrate judge to answer a(n)

☑ Indictment   ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☐ Complaint

☐ Order of Court   ☐ Violation Notice   ☐ Probation Violation Petition   ☐ Supervised Release Violation Petition

charging him or her with (brief description of offense)

**Conspiracy to Commit Mail, Wire and Bank Fraud**

in violation of United States Title:Section(s)

**18:1349**

| | |
|---|---|
| Patricia Hill | Deputy Clerk |
| Name of Issuing Officer | Title of Issuing Officer |
| *Patricia Hill* | 12/13/2017          Pittsburgh |
| Signature of Issuing Officer | Date and Location |

Bond to be set by U.S. Magistrate Judge.

## RETURN

This warrant was received and executed with the arrest of the above−named defendant _____

| | |
|---|---|
| _____ | _____ |
| Date Received | Name and Title of Arresting Officer |
| _____ | _____ |
| Date of Arrest | Signature of Arresting Officer |

**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEC 12 2017

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

UNITED STATES OF AMERICA )
)
v. )   Criminal No. 17-335
)   (18 U.S.C. § 1349)
DEVAN ABRAMS )   (UNDER SEAL)
TAMARA FELDMAN )
   a/k/a Tamara Petrova )
AZAD KHIZGILOV )
ROMAN SHAULOV )

## INDICTMENT

### COUNT ONE

The grand jury charges:

1.      From a date uncertain in 2013, and continuing thereafter to in and around February

2017, in the Western District of Pennsylvania and elsewhere, the defendants, DEVAN ABRAMS,

TAMARA FELDMAN, a/k/a Tamara Petrova, AZAD KHIZGILOV, ROMAN SHAULOV, and

other individuals and entities known and unknown to the grand jury, engaged in a conspiracy to

violate the following laws of the United States:

   a.   Mail Fraud, in violation of 18 U.S.C. § 1341;

   b.   Wire Fraud, in violation of 18 U.S.C. § 1343; and

   c.   Bank Fraud, in violation of 18 U.S.C. § 1344(2).

### INTRODUCTION

At all material times:

2.      There were various entities involved in the processing of credit card payments,

including credit card issuers, credit card acquirers or processors, companies that operated credit

card networks, and companies that operated gateways (collectively "Credit Card Companies") that

had policies that precluded the use of their products and services for on-line pharmacies, the sale

of products in violation of trademark laws, on-line gambling, and various other illegal or high-risk activities (collectively "Precluded Activity" or "Precluded Activities").

3.      The Credit Card Companies had internal controls that checked compliance with their policies in an effort to insure that their products and services were not used for Precluded Activities, including checking web sites.

4.      The defendants, DEVAN ABRAMS, TAMARA FELDMAN, a/k/a Tamara Petrova, AZAD KHIZGILOV, and ROMAN SHAULOV, were associated with various entities that processed credit card payments for Precluded Activities.

MANNER AND MEANS OF THE CONSPIRACY

5.      It was part of the conspiracy that conspirators, including the defendants, DEVAN ABRAMS, TAMARA FELDMAN, a/k/a Tamara Petrova, AZAD KHIZGILOV, and ROMAN SHAULOV, subverted and caused the subversion of the policies of the Credit Card Companies and caused the Credit Card Companies to provide services and money, through a series of misrepresentations designed to conceal from the Credit Card Companies the processing of credit card transactions for Precluded Activities by making it appear as though the credit card transactions were for goods and services that the Credit Card Companies' policies would permit (collectively "Permitted Activity" or "Permitted Activities").

6.      It was further a part of the conspiracy that the defendant, DEVAN ABRAMS, recruited overseas companies involved in Precluded Activities that sought services related to the processing of credit card transactions related to consumers in the United States, including in the Western District of Pennsylvania, for Precluded Activities.

7.      It was further a part of the conspiracy that the defendant, ROMAN SHAULOV, allowed companies with which he was associated, and which were involved in Permitted

2

Activities, to process credit card payments for Precluded Activities as if they were Permitted Activities, and he received compensation for this service.

8.      It was further part of the conspiracy that members of the conspiracy, including the defendant, AZAD KHIZGILOV, recruited individuals in whose names members of the conspiracy established and caused the establishment of shell corporations known and unknown to the grand jury that were not truly involved in any business.

9.      It was further part of the conspiracy that members of the conspiracy, including the defendant, DEVAN ABRAMS, established and caused the establishment of internet web sites associated with the shell corporations that advertised a Permitted Activity or Permitted Activities.

10.     It was further a part of the conspiracy that members of the conspiracy established and caused the establishment of bank accounts through federally insured financial institutions in the names of the shell corporations.

11.     It was further a part of the conspiracy that members of the conspiracy, including the defendant, TAMARA FELDMAN, a/k/a Tamara Petrova, applied and caused the submission of applications for merchant accounts from Credit Card Companies falsely claiming that the shell corporations would process payments for Permitted Activities through the associated web sites.

12.     It was further a part of the conspiracy that members of the conspiracy, when sales of Precluded Activities were made through the merchant accounts, caused the company names associated with the sales to the shell corporations to appear on the credit card statements of the consumers, rather than the actual entities selling the products, to conceal the true nature of the transactions and the business involved.

3

13.     It was further a part of the conspiracy that members of the conspiracy caused the credit card statements provided to the consumers to include telephone numbers related to the sale for inquiries by customers.

14.     It was further a part of the conspiracy that members of the conspiracy established and caused the establishment of telephone banks that the customers called for inquiries, and members of the conspiracy, including the defendant, TAMARA FELDMAN, a/k/a Tamara Petrova, explained to the customers the true nature of the transactions, namely Precluded Activities, with the intent of stopping the customers from seeking refunds for the purchases or otherwise reporting the activity to the Credit Card Companies.

15.     It was further a part of the conspiracy that members of the conspiracy, if the sales were successfully processed, received payments from the Credit Card Companies that were deposited into the bank accounts associated with the shell corporations, but controlled by members of the conspiracy.

16.     It was further a part of the conspiracy that members of the conspiracy caused payments received through the conspiracy to be paid to the organizations and individuals associated with the fraudulent credit card processing and to the entities associated with the Precluded Activities.

17.     It was further a part of the conspiracy that members of the conspiracy used the interstate wires to, among other things, communicate among themselves, with the Credit Card Companies, and with consumers, and to make and receive payments.

18.     It was further a part of the conspiracy that members of the conspiracy used the United States mail and interstate commercial carriers to, among other things, send the products purchased through the methodology described above.

4

19.     It was further a part of the conspiracy that many of the Credit Card Companies were federally insured financial institutions or wholly owned subsidiaries of federally insured financial institutions.

20.     It was further a part of the conspiracy that much of the money ultimately involved in the fraudulent transactions flowed through accounts of federally insured financial institutions.

All in violation of Title 18, United States Code, Section 1349.

A True Bill,

Foreperson

SOO C. SONG
Acting United States Attorney
DC ID No. 457268

5